SHIRLEY S. ABRAHAMSON, C.J.

(concurring.)

I join this opinion.
¶ 26. I write separately because this is one of the first opinions written and mandated under a new procedure in this court for circulating and mandating *19 opinions. This case turns out to be a good case to test our new procedure: It is a unanimous opinion presenting one issue.
¶ 27. In keeping with this court's longstanding commitment to transparency and open government and "for the advice of counsel practicing in the Supreme Court and for information to the public,"[1] this court has published its internal operating procedures since 1984. This practice of openness and transparency should be continued.[2]
¶ 28. The Internal Operating Procedures presently set forth our procedure for the preparation and mandate of a draft opinion as follows:
ILF. ASSIGNMENT OF CASES ... After the cases are assigned, the justice prepares a draft opinion for circulation to the court.
G. OPINION To place a draft opinion on the conference agenda, a justice must circulate his or her draft opinion at least seven calendar days prior to the conference. Justices are encouraged to submit objections or suggestions in writing to the author, with copies to all justices prior to the conference.
The court considers each draft opinion carefully as to language and substance, and if there are any changes to be made that are of more than minimal importance, the *20 opinion is recirculated and reconferenced. Any justice, whether in the majority or dissent, may at any time prior to the issuance of the mandate ask that an opinion be held and reconferenced.
Each justice who elects to write an opinion concurring in or dissenting from the court's opinion ordinarily announces that intention at an opinion conference. The author of a concurring or dissenting opinion and a justice who has asked that an opinion be held should give first priority to the concurring or dissenting opinion and to the opinion being held. Justices must circulate concurring or dissenting opinions and remove the hold on any opinion before circulating opinions in cases assigned to them. Any justice may reconsider his or her vote on the court's decision or opinion until the decision is mandated.
I. MANDATE The court's decision in a case is mandated promptly upon approval of the opinion by the court and upon notification by the chief justice to the clerk. The court's opinion is issued simultaneously with any concurring or dissenting opinions.
When a decision is ready to be mandated, the court's opinion, along with any concurring or dissenting opinions, is transmitted to the clerk's office where it is reviewed and assigned a public domain citation. The case name and number of opinions that are scheduled for release are ordinarily posted on the court's website two days prior to the scheduled release date. On the day of mandate, the clerk's office telephones the attorneys for the parties, notifying them of the court's decision,[3] releases the opinion to the parties and makes copies of the opinion available for public inspection. The opinion is also posted to the court's website. The opinion *21 remains subject to further editing and modification. The office of the clerk arranges for the publication of the final version of the opinion in the official publications.
¶ 29. The new procedure was adopted on September 25, 2014, by a divided court.[4] In adopting this new procedure, regrettably (in my opinion) the court did not consider the court's Internal Operating Procedures (published in volume 6 of the Wisconsin Statutes); did not give notice to or seek comments from the bench, bar, or public; and did not consult the practices of other state courts.
¶ 30. A verbatim statement of the new procedure for opinion preparation and mandate is as follows:
FIRST: Within 10 days after the first circulation of a majority opinion, each justice shall declare by email to all justices participating in the case in one of four ways: (1) joining the opinion; (2) joining the opinion if specifically described changes are made; (3) concurring; or (4) dissenting.
SECOND - MAJORITY OPINION: Within 10 days of receiving a request for specifically described changes, the author of the majority opinion shall consult among members of the majority to determine whether some or all of the specifically described changes are acceptable. If some or all are acceptable, the majority opinion shall be revised and recirculated within 14 days after the initial 10 day consultation period. If some or all of the specifically described changes are not acceptable to the majority who support the first circulation, the justice whose changes were not accepted shall declare by email that he or she joins the majority opinion, notwithstand *22 ing the lack of changes that were requested, or that he or she will write separately. A justice who asked for changes in the majority opinion and does not join the majority opinion shall declare a concurrence or dissent and circulate his or her separate writing within 21 days of circulation of the revised majority opinion or the determination that the majority opinion will not be revised to meet his or her request whichever occurs first.
SECOND - SEPARATE WRITINGS: Whether concurring or dissenting, a justice who declares a separate writing in response to the first circulation of a majority opinion has 30 days after the justice's declaration to circulate his or her separate writing. No new majority opinions shall be circulated by justices who are writing separately.
THIRD: Upon circulation of a separate opinion, the author of the majority opinion has 14 days in which to revise, and upon receipt of those revisions, dissents and concurrences have 14 days to respond to the majority's revision. The revision of dissents and concurrences shall not create a new opinion, but shall respond only to revisions in the majority opinion. (In the past, some justices circulated cursory separate opinions in order to be able to circulate another majority opinion and then extensively revised the separate opinion, creating unnecessary delay. We are attempting to prevent this delay-causing practice by limiting the revisions to separate opinions.)
Upon recirculation of the majority opinion and recirculation of the separate writings, each justice shall, within 10 days, by email to all justices participating in the case make a final declaration of which opinion he or she is joining. If during this process the opinion originally circulated as the majority opinion does not garner the vote of a majority of the court, it shall be referred to in separate writings as the "lead opinion." If a separate writing garners the vote of a majority of the court *23 thereby changing the mandate of the opinion, it shall be revised as the majority opinion within 14 days of the vote of the court. During that same 14 day period, other separate writings shall be revised to indicate their status as concurrences or dissents to the new majority opinion. The majority opinion and the separate writings shall be mandated upon final declaration.
Within 5 days of mandate, the majority opinion shall be placed in the release drive; within 5 days after that event, the separate writings also shall be placed in the release drive for transmittal of all writings to the clerk's office for release to the public, unless release of separate writings is delayed as required by step "FOURTH" below.
FOURTH: If during the course of a separate writing, the author cites to a case then pending before us for which the opinion of the court has not been released, the majority opinion shall be released with the designation, "separate opinion(s) to follow," unless the citation can be replaced with ellipses in which case the separate opinion shall be released with the majority opinion and the ellipses shall he replaced with the omitted citation when the cited opinion is released. There shall be no further changes to the separate writings after mandate. Separate writings for which the citation cannot be replaced with ellipses shall be released when the then unreleased decision that was cited in the separate opinion is released.
FIFTH: No one justice may block the release of a majority opinion by a "Hold." It shall take the affirmative vote of the majority of participating justices to block the release of a majority opinion. No one justice may tie together the release of two pending cases. It shall take the affirmative vote of a majority of participating justices in each case to tie together the release of two pending cases.
SIXTH: Majority opinions assigned in September, October and November shall be circulated no later than *24 January 31. Majority opinions assigned in December, January and February shall be circulated no later than March 31. Majority opinions assigned in March and April shall be circulated no later than May 31.
There will be no court conferences on circulated opinions unless a majority of justices participating in the case request court conference on the circulated opinion(s) in that case.
The times for responding to majority opinions first circulated after April 15 will need to be shortened from what is set forth above. We will make a decision about what timelines are needed during April 2015 when we see how many opinions remain outstanding.
There also may need to be some flexibility when applying this process to the opinions due by January 31 and March 31. Flexibility may be needed generally because this is a new process. It is anticipated that if a justice has tried but cannot meet the expected deadlines, he or she will request an extension for a specified time so all will understand where the court is in opinion processing and release.
¶ 31. The flow chart accompanying the narrative is as follows:
The following is a flow chart representing the revised Opinion Preparation & Mandate proposal. For clarity, the chart is broken into two separate pieces: the first, directly below, represents the process for initial circulations of all opinions; the second, on page two, represents the process from circulation of all opinions through revisions and mandate.
*25 [[Image here]]
*26 [[Image here]]
*27 General notes:
All deadlines are calendar days.
• The maximum time under this proposal from first circulation of a majority opinion to mandate is 107 days. This assumes that all maximum time is taken and each of the following occurs:
• A Justice does not declare a concurrence or dissent until after the majority has been recirculated and incorporated suggested changes; and
• The majority flips, triggering the additional 14 day revision period.
• The five day periods for placing opinions in the Release Drive following mandate are for cite checking and spelling and grammar revisions.
¶ 32. Key portions of the Internal Operating Procedures (which we have generally followed since before 1984 up until September 2014) are as follows: All opinions were discussed in conference, often several times; any justice could ask that a draft opinion be held and reconferenced; and majority opinions would be released simultaneously with any concurring or dissenting opinions.
¶ 33. The new procedure departs from our longstanding procedure for opinions and mandates in several important ways. Starting in September, draft opinions cannot be discussed at conference. To hold a conference on a draft opinion, a vote of four justices is required. No single justice can hold an opinion; a vote of four justices is required. Furthermore, in certain circumstances a majority opinion may be released without being accompanied by a concurring or dissenting opinion; the drafted concurring and dissenting opinions *28 must be released at a later date. These provisions, as well as the short time periods allowed for separate writings, are unwelcoming to concurrences and dissents.
¶ 34. Ambiguities and cracks in the process have already appeared. Some were identified during the adoption of the new procedure, others not.
¶ 35. Changing the ways the court does its business is important. Circumstances change, personnel changes, and technology changes. Timely release of our opinions after oral argument is important for the litigants, for the bench and bar, for the public, and for this court. We should not, however, sacrifice thoughtful discussion and careful collegial review of draft opinions just for the sake of speed. For at least the last 50 years, cases heard from September 1 through June have been completed by June 30 (unless additional briefing was required), regardless of the procedure used for circulating and mandating opinions.
¶ 36. Only time will tell whether this new procedure will produce thoughtful, precise opinions that are released more promptly, or whether it will even produce opinions that are released more promptly. At this time, we are encountering the ambiguities and uncertainties of the procedure and the different timelines for numerous circulating opinions (some addressing similar issues). Figuring out due dates and maintaining a flow chart for each draft opinion is unwieldy and difficult because of ambiguities in calculating time periods and numerous redrafts that are not accounted for in the narrative or flow chart.
¶ 37. Changes in the newly adopted procedure are being requested and should be given serious consideration. Improvements may make this experimental new procedure more satisfactory.
*29 ¶ 38. The court might even consider a simpler procedure to accomplish the goals of reducing conferences and establishing deadlines. For example, there might be an initial conference discussion of a draft opinion to identify the areas of strength and weakness, to identify areas of agreement and disagreement, and to determine whether opinions involving the same legal issues need to be put on the same timeline for harmonization. Deadlines might be established at this conference for each opinion to fit the circumstances, such as the extent of revisions required, the number and approaches of separate writings, and the work of the court and the individual justices.
¶ 39. There may be other and better suggestions for the court to consider.
¶ 40. For the reasons set forth, I write separately.

 1ntroduction, Wisconsin Supreme Court Internal Operating Procedures, printed in volume 6 of the Wisconsin Statutes (2011-12), available at http://www.wicourts.gov/sc/IOPSC.pdf (last visited Nov. 25, 2014).

 The present Internal Operating Procedures "describe the manner in which the Supreme Court currently processes, considers and decides judicial matters brought to the court." Wisconsin Supreme Court Internal Operating Procedures, Introduction, available at http://www.wicourts.gov/sc/IOPSC.pdf (last visited Nov. 25, 2014).

 In practice, the parties' attorneys are no longer notified by telephone now that opinions are posted to the court's website.

 Justices Crooks, Roggensack, Ziegler, and Gableman voted in favor of adopting this procedure. Justices Bradley and Prosser and I dissented.